IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

HOPE K. WILLIAMS as          )
Independent Administrator of )
the Estate of her Father,    )
OLIN B. KICKLIGHTER, JR.,    )
                             )
            Plaintiff,       )        8:13CV287
                             )
      v.                     )
                             )
MARTIN FEENEY, Individually  )        MEMORANDUM AND ORDER
and FEENEY XPRESS TRANSPORT; )
BARY FRANKLIN, individually, )
and RANCHERO, LLC,           )
                             )
            Defendants.      )
_____)


        This matter comes before the Court on two related

motions.  First, defendant Rachero L.L.C. ("Ranchero") filed a

motion (Filing No. 110) to compel discovery of mental health

records belonging to the decedent, Olin Kicklighter

("Kicklighter").  Second, all defendants, Ranchero, Feeney Xpress

Transport, Inc. ("Xpress"), Martin Feeney ("Feeney"), and Bary

Franklin ("Franklin"), move (Filing No. 113) to continue the

trial in this matter for six months.  The Court finds as follows.

I.   BACKGROUND

        Plaintiff, Hope Williams ("Williams"), is the

independent administrator of Kicklighter's estate.  Kicklighter

died as a result of a multi-vehicle collision involving Franklin

and Feeney late in the evening of December 8, 2011.  These
motions center around Kicklighter's medical records.

        Kicklighter was a veteran and received health care
treatment at the Sacramento Veteran's Administration Medical
Center ("the VA") in California.  Around August 27, 2014, the
defendants served a notice of intent to subpoena the VA for the
production of Kicklighter's medical records.  After plaintiff's
counsel waived any objection, defendants served the subpoena on
the VA September 2, 2014.  The VA refused to divulge the records
without written consent.  Two months later, Williams authorized
records from May 1, 2005, through December 31, 2014, and
expressly limited consent to exclude psychiatric records.

        The records arrived from the VA on February 9, 2015,
and included fifteen pages of psychiatric records, contrary to
the consent waiver.  Ultimately, the parties resolved the dispute
concerning those pages, and they were destroyed.

        In the interim, the defendants received discovery from
another collision Kicklighter had in Alabama.  The Alabama
Uniform Traffic Crash Report indicated that on June 5, 2010,
eighteen months prior to his fatal collision in Nebraska,
Kicklighter saw ghosts on the highway.  These ghosts directed
Kicklighter to stop his vehicle and drive in reverse on the
highway.  Kicklighter complied with the apparitions and caused a

-2-

collision.  The defendants, wishing to pursue concerns involving Kicklighter's mental health, seek to obtain Kicklighter's VA mental health records.  The defendants also seek a six-month extension of the trial date.

Plaintiff's counsel objected to the production of all records in his "possession, custody or control, which deal in any way with the health, whether mental or physical, of Olin B. Kicklighter, Jr." (Filing No. 111-1, at 101).  Specifically, counsel objected that the request was overly broad, vague, ambiguous, substantively irrelevant, temporally irrelevant, and protected under the psychotherapist-patient privilege.

II.  LEGAL STANDARDS

In her objections, the plaintiff cites a recent District of Nebraska case.  Filing No. 111-1, at 101 (citing *Gering v. Duetsch,* No. 7:13CV5009, 2014 WL 7331824 (D. Neb. Dec. 19, 2014)).  The following excerpt discusses the legal standards for discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  Broad discovery is an important tool for the litigant, and so relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, relevant

-3-

> information includes any matter
> that bears on, or that reasonably
> could lead to other matter that
> could bear on, any issue that is or
> may be in the case.  However, the
> proponent of discovery must make
> some threshold showing of relevance
> . . . before parties are required
> to open wide the doors of discovery
> and to produce a variety of
> information which does not
> reasonably bear upon the issues in
> the case.  Accordingly, once the
> requesting party meets the
> threshold relevance burden, the
> party resisting the discovery has
> the burden to establish that the
> requested discovery does not come
> within the scope of relevance as
> defined under Rule 26(b)(1). . . .

*Id.* at *4 (internal citations and quotations omitted).  The Court

then went on to discuss the physician-patient privilege as

follows:

> A patient has a privilege to refuse
> to disclose and to prevent any
> other person from disclosing
> confidential communications made
> for the purposes of diagnosis or
> treatment of his or her physical,
> mental, or emotional condition
> among himself or herself, his or
> her physician, or persons who are
> participating in the diagnosis or
> treatment under the direction of
> the physician, including members of
> the patient's family.
>
> However, there is no privilege
> under this rule as to
> communications relevant to an issue
> of the physical, mental, or
> emotional condition of the patient

-4-

in any proceeding in which he or
she relies upon the condition as an
element of his or her claim or
defense.  The purpose behind the
patient-litigant exception to the
physician-patient privilege is to
prevent the patient from making his
condition an element of the
dispute, and then invoke the
privilege to prevent the opposing
party from ascertaining the true
condition of the patient.

Courts treat the physician-patient
privilege and its exception similar
to the analysis of a court-ordered
mental evaluation under Rule 35.
In Nebraska, a routine allegation
of negligence in a personal injury
action does not put a party's
mental condition in controversy for
purposes of the federal counterpart
to our Rule 35.

Similarly, courts outside of
Nebraska have held "garden-variety"
or generic claims for emotional
distress damages do not implicate a
waiver of the privilege.  Garden-
variety claims will typically
involve emotions rather than
conditions.  Limiting potential
claims in this way ensures that the
alleged distress will fall within
the common experience of jurors
such that they can readily
understand the nature or severity
of the emotional distress.  By
contrast, a claim is not a
garden-variety anguish claim if it
involves a diagnosable mental
disease or disorder, medical
treatment or medication,
longstanding, severe, or permanent

> emotional distress, physical
> symptoms, or expert testimony.

*Id.* at *5-6 (internal citations and quotations omitted).
Defendants bear the burden to establish the requested materials
are relevant.  Williams, as the party asserting the privilege,
bears the burden to show that the documents being sought are
privileged, if relevant.  *Schropp Indus., Inc. v. Washington
Cnty. Att'y's Office*, 281 Neb. 152, 167, 794 N.W.2d 685, 687
(2011).

III. ANALYSIS

The Court cannot analyze the admissibility of the VA
mental records.  Williams argues the VA mental records are not
admissible at trial and therefore irrelevant.  Filing No. 120 at
8-9.  The Court is unable to determine the admissibility issues
with the VA mental records because it is not privy to the
contents of those records.

A.   RELEVANCE

The first issue is whether the defendants have made a
threshold showing that the VA mental records include "any matter
that bears on, or that reasonably could lead to other matter that
could bear on, any issue that is or may be in the case." *Gering,*
No. 7:13CV5009, at *4.  The parties have not disclosed the
specific contents of the VA mental health records.

-6-

On June 5, 2010, Kicklighter had driven backwards on a highway because ghosts told him to do so.  The factual basis of this case involves an accident, just over eighteen months later, on a highway where Kicklighter was the front driver.  The VA mental records in question span from May 1, 2005, through December 31, 2014.  The parties do not dispute the relevancy of this time period because the parties agreed the VA should supply records for that time, and those dates span the two accidents. The VA mental records could, at least, speak directly to the defendants' affirmative defense of contributory negligence.  The Court finds the defendants sustained their burden that the VA mental records include "any matter that bears on . . . any issue that is . . . in the case."  Fed. R. Civ. P. 26(b)(1).

B.   FEDERAL RULE OF CIVIL PROCEDURE 26

Williams also has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1).  *Gering,* No. 7:13CV5009, at *4. Federal Rule of Civil Procedure 26(b)(1) cross cites to Federal Rule of Civil Procedure 26(b)(2)(C).  Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) reads as follows:

> On motion . . . the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

-7-

> (i) the discovery sought is
> unreasonably cumulative or
> duplicative, or can be obtained
> from some other source that is more
> convenient, less burdensome, or
> less expensive;
>
> (ii) the party seeking discovery
> has had ample opportunity to obtain
> the information by discovery in the
> action; or
>
> (iii) the burden or expense of
> the proposed discovery outweighs
> its likely benefit, considering the
> needs of the case, the amount in
> controversy, the parties'
> resources, the importance of the
> issues at stake in the action, and
> the importance of the discovery in
> resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

Williams argues the defendants have had ample time to obtain the VA mental health records, which Ranchero first requested in February 2015. Filing No. 20, at 22. She also argues that the defendants have offered no explanation for their failure to request such documents. The Court does not agree. The defendants first asked for Kicklight's medical records as early as July 14, 2014. Filing No. 121-1, at 2. Sometime after that request, Williams submitted information regarding Kicklighter's 2010 collision. On February 9, 2015, the defendants received copies of the VA records. The defendants fought to maintain all of the documents, but ultimately destroyed

-8-

fifteen pages thereof.  Ranchero now makes the current request.
The Court finds that the defendants lacked ample time to obtain
the documents and did not know of the existence of such documents
until recently.

     Next, Williams argues that the burden and cost of
supplying the discovery outweighs the probative value.  Filing
No. 120, at 22.  Williams argues that Kicklighter's mental health
will not become an issue at trial.  Williams argues that the
Court will exclude the evidence, so the cost and burden outweigh
its value.  The cost and burden of providing the information does
not outweigh the potential relevance of this discovery.

C.   FEDERAL IMMUNITY

     The Court must also determine whether Nebraska or
federal law applies.  Williams originally argued for the
application of the psychotherapist-patient federal privilege.
According to Federal Rule of Evidence 501, however, state law
governs privilege regarding a "claim or defense for which state
law supplies the rule of decision."  Fed. R. Evid. 501.  Nebraska
law controls the decision in this case.  *See* Advisory Committee
cmts. to Fed. R. Evid. 501.

D.   NEBRASKA PRIVILEGE

     Here, the Court examines whether Nebraska privilege
prohibits the discovery of the VA mental health records, and in

so doing, the Court analyzes whether Williams pled a "garden-variety" mental health claim, whether the claim placed Kicklighter's mental health at issue, and whether the Nebraska jury instructions require physical or mental health evidence.

The issue is whether Kicklighter's mental health condition is "an element of [Wiliiams'] claim or defense. . . ." Neb. Rev. Stat. § 27-504(4)(b). Generally, Nebraska's physician-patient privilege gives patients, or their personal representative if the patient is deceased, the right to refuse to disclose "confidential communications made during counseling between himself . . . [and his] professional counselor. . . ." *Id.* The defendants rely on the following exception to this rule:

> There is no privilege under this rule as to communications relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he or she relies upon the condition as an element of his or her claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his or her claim or defense.

Neb. Rev. Stat. § 27-504(4)(c). Williams bears the burden to prove that the VA mental records are protected. *See Schropp Indus., Inc. v. Washington Cnty. Att'y's Office*, 281 Neb. 152, 794 N.W.2d 685 (2011).

It is clear that when the plaintiff pleads emotional distress, it is a "garden-variety" claim that does not constitute a waiver of the privilege by the plaintiff.  *Gering,* No. 7:13CV5009, at *6.  Williams wants to establish that her claim does not rise to the necessary level to waive the privilege. However, if the patient is deceased, the privilege is waived when either party relies upon the mental condition of the decedent in a claim or defense.  This is important because Williams relies exclusively upon cases wherein the plaintiff is not deceased and those cases require the living plaintiff put her own mental state in question.  *See* Filing No. 120, at 11-12 (citing *Huber v. Rohrig*, 791 N.W.2d 590, 604 (Neb. 2010), *Gering*, No. 7:13CV5009, 2014 WL 7331824; *cf. Garvin v. Coover*, 202 Neb. 582, 276 N.W.2d 225 (1979) (no argument of mental illness), *Rhein v. Caterpillar Tractor Co.*, 314 N.W.2d 19 (Neb. 1982) (no mention of privilege or mental state), *Kroeger v. Safranek*, 165 N.W.2d 221 (Neb. 1957) (predating the privilege statute).

Conversely, the defendants attest that they believe that the VA mental health records are necessary because they wish to offer that evidence to substantiate their burden of proof for their affirmative defense of contributory negligence.  Because Kicklighter is deceased and the defendants assert the affirmative defense of contributory negligence due to Kicklighter's mental

-11-

health and car accident history, the Court finds that the defendants have sufficiently met the exception of the physician-patient privilege to warrant discovery of the VA mental records. *See* Neb. Rev. Stat. § 27-504(4)(c).

E.   CALIFORNIA CONSTITUTION

Under the California Constitution, citizens have an inalienable right to privacy that can only be overcome when a party seeking medical records shows the information sought is will be "directly relevant to the claim or defense." *Harris v. Superior Ct.,* 3 Cal. App. 4th 661, 665 (2d Dist. 1992). The Court finds that the VA mental records will be relevant to the defendants' defense.

IV. CONCLUSION

The Court will grant the defendants' motion. The VA mental records are relevant to whether Kicklighter was a competent driver, particularly in light of the 2010 Alabama traffic incident. The records may offer information as to Kicklighter's medications and fitness on the day of the accident. The scope of this order does not determine whether the VA mental records will be admissible at trial. The facts before the Court are sufficient to determine that the VA mental records are discoverable.

-12-

The production of the fifteen pages of documents should not hinder the progression of this case.  The motion to continue the trial will be denied.

IT IS ORDERED:

1) Defendant Ranchero's motion (Filing No. 110) to compel discovery is granted.  Plaintiff shall produce the documents in question on or before April 27, 2015.

2) The defendants' joint motion (Filing No. 113) to continue trial is denied.

DATED this 22nd day of April, 2015.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court